## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

STEVEN MUSSMAN, On Behalf of Himself
and All Others Similarly Situated,

    Plaintiff,

  v.

GENVEC, INC., DOUGLAS J. SWIRSKY,
MICHAEL RICHMAN, WAYNE T.
HOCKMEYER, WILLIAM N. KELLEY,
STEFAN D. LOREN, QUINTEROL J.
MALLETTE, and MARC R.
SCHNEEBAUM,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.

JURY TRIAL DEMANDED

CLASS ACTION

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Steven Mussman ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.  This is a class action brought on behalf of the public stockholders of GenVec, Inc. ("GenVec" or the "Company") against GenVec and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which GenVec will be acquired by Intrexon Corporation ("Intrexon"), through its wholly-owned subsidiary Intrexon GV Holding, Inc. ("Merger Sub")

(the "Proposed Transaction").

2.   On January 24, 2017, GenVec issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell GenVec to Intrexon.  Under the terms of the Merger Agreement, for each share of GenVec common stock they own, GenVec stockholders will receive 0.297 shares of Intrexon common stock, representing $7.00 per share of GenVec common stock based on Intrexon's 5-day volume weighted average price as of January 23, 2017, plus one contingent payment right ("CPR") (the "Merger Consideration").  The CPR represents the right to receive an amount in cash equal to (i) 50% of (a) all milestone payments, if any, received by Intrexon or the surviving corporation for milestones that are achieved or occur under the Research Collaboration and License Agreement between GenVec and Novartis Institutes for BioMedical Research, Inc. (together with Novartis AG and its subsidiary corporations, including Novartis Pharma AG, "Novartis"), dated January 13, 2010 (the "NVS License Agreement"), during the 36-month period following the effective time of the Proposed Transaction, and (b) all royalty payments, if any, made by Novartis under the NVS License Agreement during such 36-month period, divided by (ii) all then-outstanding CPRs.

3.   On March 17, 2017, Intrexon and GenVec filed a joint Registration Statement on Form S-4 (the "Registration Statement") with the SEC in connection with the Proposed Transaction.  The Registration Statement, which recommends that GenVec stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) GenVec management's and Intrexon's projections, including the GenVec projections utilized by the Company's financial advisor, Roth Capital Partners, LLC ("Roth") in its financial analyses; (ii) the background of the process leading up to the Proposed Transaction;

(iii) Roth's potential conflicts of interest; and (iv) the valuation analyses prepared by Roth in connection with the rendering of its fairness opinion. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as GenVec stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.    In short, the Proposed Transaction is designed to unlawfully divest GenVec's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.    This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper under 28 U.S.C. § 1391 as well as under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because a substantial portion of the actionable conduct took place in this District.

**PARTIES**

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of GenVec.

9.     Defendant GenVec is a Delaware corporation with its principal executive offices located at 910 Clopper Road, Suite 220N, Gaithersburg, Maryland 20878.  The Company is a clinical-stage biopharmaceutical company.  GenVec's common stock is traded on the NASDAQ under the ticker symbol "GNVC."

10.     Defendant Douglas J. Swirsky ("Swirsky") has been the Company's President, Chief Executive Officer ("CEO") and a director since September 2013 and has been the Company's Corporate Secretary since 2006.  Defendant Swirsky joined the Company in 2006 as Chief Financial Officer, Corporate Secretary and Treasurer.

11.     Defendant Michael Richman ("Richman") has been Chairman of the Board since October 2016.

12.     Defendant Wayne T. Hockmeyer ("Hockmeyer") has been a director of the Company since December 2000.

13.     Defendant William N. Kelley ("Kelley") has been a director of the Company since June 2002.

14.     Defendant Stefan D. Loren ("Loren") has been a director of the Company since September 2013.

15.     Defendant Quinterol J. Mallette ("Mallette") has been a director of the Company since October 2014.

16.     Defendant Marc R. Schneebaum ("Schneebaum") has been a director of the Company since April 2007.

4

17. Defendants Swirsky, Richman, Hockmeyer, Kelley, Loren, Mallette and Schneebaum are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. Intrexon is a Virginia corporation with its principal executive offices located at 20374 Seneca Meadows Parkway, Germantown, Maryland 20876. Intrexon is a company focused on synthetic biology that designs, builds and regulates gene programs.

19. Merger Sub is a Delaware corporation and a wholly-owned indirect subsidiary of Intrexon.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own GenVec common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

22. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of March 14, 2017, there were approximately 3,009,710 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by GenVec or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

5

23.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

24.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

25.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

26.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Company Background and Strong Financial Outlook

27.     GenVec is a clinical-stage biopharmaceutical company focused on leveraging its AdenoVerse gene delivery platform to develop a pipeline of therapeutics and vaccines.  GenVec is a pioneer in the design, testing and manufacture of adenoviral-based product candidates.  The Company's lead product candidate, CGF166, is licensed to Novartis and is currently in a Phase 1/2 clinical study for the treatment of hearing loss and balance disorders.

28.    GenVec also focuses on opportunities to license its technology platform, including vectors and production cell lines, to potential collaborators in the biopharmaceutical industry for the development and manufacture of therapeutics and vaccines.  The combination of the Company's internal and partnered development programs address therapeutic areas such as hearing loss and balance disorders, oncology, bleeding disorders, as well as vaccines against infectious diseases, including respiratory syncytial virus, herpes simplex virus, malaria; and in the area of animal health vaccines against foot-and-mouth disease.

29.    GenVec and Novartis entered into the NVS License Agreement in January 2010 in order to research and develop treatments for hearing loss and balance disorders.  Under the NVS License Agreement, GenVec licensed the rights to its preclinical hearing loss and balance disorders program to Novartis for a $5.0 million upfront payment and Novartis purchased $2.0 million of GenVec common stock.  The Company is also eligible to receive up to an additional $201 million in milestone payments under the NVS License Agreement if certain clinical, regulatory and sales milestones are met.  From September 2010 through October 2014, GenVec achieved four milestones, resulting in aggregate payments from Novartis of $5.6 million.

30.    GenVec and Novartis are also parties to an August 2010 agreement for the supply of services relating to their collaboration in hearing loss and balance disorders.  Under this agreement, valued at $14.9 million, GenVec agreed to manufacture clinical trial material for up to two lead product candidates.  During the nine-month periods ended September 30, 2016 and September 30, 2015, the Company recognized $66,000 and $178,000, respectively, for work performed under this agreement.

**The Sale Process**

31. During the past few years, GenVec and Intrexon have been in communication regarding potential collaborations and transactions between the two companies. In August 2015, during one such communication, the parties entered into a confidentiality agreement regarding a potential collaboration, but communications ended shortly thereafter.

32. On May 19, 2016, Thomas Reed ("Reed"), founder and Chief Science Officer of Intrexon, met with defendant Swirsky to discuss the possibility of a strategic transaction between GenVec and Intrexon.

33. After defendant Swirsky confirmed that the August 2015 confidentiality agreement remained effective, the GenVec and Intrexon teams met to continue discussions on June 3 and June 22, 2016.

34. Between August and November 2016, the Company engaged in discussions with third parties regarding potential business developments. After these efforts did not result in any near-term developments, defendant Swirsky contacted Reed on November 2, 2016 to follow up on prior discussions.

35. On November 22, 2016, Intrexon delivered to GenVec a letter expressing interest in pursuing a strategic transaction with the Company and requesting the parties negotiate an exclusivity agreement, which they executed on November 29, 2016.

36. Over the next few weeks, the parties held meetings and Intrexon conducted due diligence.

37. On December 28, 2016, GenVec received a non-binding proposal from Intrexon to acquire GenVec in a stock-for-stock transaction, at an implied price of between $3.75 and $3.85 per share. The Company rejected this proposal and after failing to receive a new offer

from Intrexon by January 10, 2017, the Board determined to engage in capital raising efforts and issue up to $10 million of common stock.

38.    Prior to executing documents with respect to a private placement, on January 20, 2017, Intrexon delivered a non-binding proposal to acquire GenVec at a price of $6.00 per share in the form of Intrexon common stock plus a CPR covering the next milestone to be received under the NVS License Agreement.  The parties ultimately agreed to an offer of Intrexon common stock having a value of $7.00 per GenVec common share plus 50% of (a) the milestone payments and (b) the royalty payments, if any, received under the NVS License Agreement during the next 36 months.  Intrexon management also informed defendant Swirsky that Intrexon intended to execute a definitive agreement prior to the opening of the stock markets on January 23, 2017, just three days later.

39.    On January 21, 2017, the Board met to discuss the status of discussions with Intrexon.  Notably, the Board authorized defendant Swirsky to engage Roth as the Company's financial advisor *after* it agreed to the $7.00 per share proposal, and only for the purpose of providing a fairness opinion, rather than providing advice to the Board on the adequacy of the consideration or to solicit third party interest.  The Board also formed a special committee to consider the terms of and negotiate the Intrexon transaction.  The Registration Statement fails to disclose what necessitated formation of the special committee, the composition of the special committee, and the specific directives and authority given to the special committee.

40.    The parties and their legal advisors then discussed the terms of a merger agreement, under which GenVec proposed that the purchase price of GenVec common stock be determined using an exchange ratio calculated based on the 20-day volume weighted average price ("VWAP") of Intrexon common stock as of the close of business on January 20, 2017, a

"go-shop" provision with a $250,000 termination fee, an exchange ratio with a "floor" of $6.50 per share, and a termination fee of $450,000 and no repayment of expenses in the event the GenVec stockholders do not approve the Proposed Transaction.  Following negotiations, the Merger Agreement shows the Company's concessions, which ultimately did not include a "go-shop" provision or an exchange ratio with a "floor," and the Company agreed to an exchange ratio calculated based on the 5-day VWAP of Intrexon common stock, rather than the 20-day VWAP of Intrexon common stock.

41.    Throughout January 23 and January 24, 2017, the parties finalized the Merger Agreement.  On January 24, 2017, Roth delivered its fairness opinion and the Board approved the Merger Agreement.  That morning, GenVec and Intrexon executed the Merger Agreement.

**The Proposed Transaction**

42.    On January 24, 2017, following execution of the Merger Agreement, the parties issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> GERMANTOWN, MD, and GAITHERSBURG, MD, Jan. 24, 2017 -- Intrexon Corporation (NYSE: XON), a leader in the engineering and industrialization of biology to improve the quality of life and health of the planet, today announced that it has entered into a definitive agreement to acquire GenVec, Inc. (NASDAQ: GNVC), a clinical-stage company and pioneer in the development of AdenoVerse™ gene delivery technology.
>
> Intrexon intends to integrate and expand upon GenVec's expertise in adenoviral vectors and cGMP drug product manufacturing to enhance its broad gene transfer capabilities that encompass multiple viral and non-viral platforms. Notably, the combined technologies have the potential to yield the next generation of adenoviral (AdV) delivery through the creation of a scalable manufacturing platform utilizing helper-dependent adenovirus with significantly higher payload capacity of >30kb, as compared to current viral delivery methods ranging from 4.5kb – 9kb.
>
> Thomas D. Reed, Ph.D., Intrexon's chief science officer commented, "Our acquisition of GenVec will mark our continuing commitment to add gene delivery

platforms that complement our multigenic control systems. Intrexon's proficiency in using various viral as well as non-viral transfer techniques to integrate our gene programs affords us the capability to pursue an array of in vivo and ex vivo gene and cell therapy approaches, and the addition of a helper-dependent adenoviral system with a substantial payload capacity dramatically expands the types of in vivo therapeutic programs we can pursue."

"GenVec has contributed significantly to advancements in gene therapy through its AdenoVerse technology, and over 3,000 clinical trial subjects have received their therapeutics and vaccines across the globe. We are enthusiastic to begin working alongside their highly accomplished research and drug development team," added Dr. Reed.

\* \* \*

Through an AdV-based vector, Intrexon has already delivered the first clinically validated transcriptional gene switch utilizing the RheoSwitch Therapeutic System® to regulate the expression and concentration of a powerful cytokine, interleukin-12, to treat cancer. Intrexon's gene control systems combined with the array of GenVec's AdV-based technology is projected to accelerate its ability to develop cutting-edge gene therapies that regulate *in vivo* expression of multiple therapeutic effectors.

Additionally, GenVec's selection of vector origins and serotypes as well as know-how in specifying cellular and tissue targets is expected to expedite the design and production of vectors that complement Intrexon's multigene programming and focus on safety with limited off-target effect.

**Insiders' Interests in the Proposed Transaction**

43.     Intrexon and GenVec insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of GenVec.

44.     Company insiders stand to reap substantial financial benefits for securing the deal with Intrexon.  Pursuant to the Merger Agreement, all stock options granted to GenVec's directors and officers will vest upon consummation of the Proposed Transaction.

45.      Further, if they are terminated in connection with the Proposed Transaction, GenVec's named executive officers stand to receive substantial cash severance payments in

11

the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($) | Equity ($) (1) | Perquisites / Benefits ($) (2) | Tax Reimbursements ($) (3) | Total ($) (4) |
|---|---|---|---|---|---|
| Douglas J. Swirsky | 963,334 (5) (6) | 13,923 | 27,465 | 0 | 1,004,722 |
| Douglas E. Brough | 341,715 (7) | 7,240 | 32,795 | 0 | 381,750 |
| Bryan T. Butman | 313,500 (8) | 3,342 | 35,081 | 0 | 351,923 |

## The Registration Statement Contains Material Misstatements or Omissions

46.     Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to GenVec's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

47.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) GenVec management's and Intrexon's projections, including the GenVec projections utilized by Roth in its financial analyses; (ii) the sale process leading up to the Proposed Transaction; (iii) Roth's potential conflicts of interest; and (iv) the valuation analyses prepared by Roth in connection with the rendering of its fairness opinion.  Accordingly, GenVec stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

### *Materially Incomplete and Misleading Disclosures Concerning the Company's and Intrexon's Financial Projections*

48.     The Registration Statement does not disclose the following information concerning GenVec management's financial projections:

(a)    The unlevered free cash flow projections for the Company before being adjusted for a "probability of success";

(b)    The line items used to calculate the Company's unlevered free cash flows; and

(c)    A reconciliation of all non-GAAP to GAAP financial metrics.

49.    Moreover, the Registration Statement does not include any projections for Intrexon of any kind.  As Roth failed to perform any valuation analysis of Intrexon, without this critical information, GenVec stockholders have no empirical basis upon which to value Intrexon, leaving GenVec stockholders in the dark as to the intrinsic value of the company whose stock GenVec stockholders will receive in exchange for their shares if the Proposed Transaction is consummated.

50.    The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)    From pages 69-71 of the Registration Statement:

**Certain financial projections of GenVec's management**

\* \* \*

*Summary of GenVec Projections*

(in dollars)

| | Projected Total 2016 | Projected Total 2017 | Projected Total 2018 | Projected Total 2019 |
|---|---|---|---|---|
| Revenue | (1) 656,136 | 500,000 | (2) 5,500,000 | 500,000 |
| Expenses | (6,842,837) | (6,520,663) | (6,595,740) | (6,745,170) |
| Financing Activity | 4,515,987 | — | — | — |
| Cash Burn (3) | (1,670,714) | (6,020,663) | (1,095,740) | (6,245,170) |
| Beginning Cash and Cash Equivalents | 8,773,009 | 7,102,295 | 1,081,632 | (14,108) |
| Ending Cash and Cash Equivalents | 7,102,295 | 1,081,632 | (14,108) | (6,259,277) |

(1)    Projected total revenue in 2016 includes $5,325 from sales of equipment.

(2)     Projected total revenue in 2018 includes an assumed $5 million from receipt of a milestone payment under the NVS License Agreement.

(3)     Cash burn is a non-GAAP financial measure. For purposes of GenVec management's projections, GenVec defined this measure to mean the net increase (or decrease) in cash and cash equivalents (as determined in accordance with GAAP).

*Materially Incomplete and Misleading Disclosures Concerning the Sale Process*

51.     The Registration Statement omits the following material information concerning the background of the Proposed Transaction and the sales process.

52.     The Registration Statement sets forth that at the January 21, 2017 Board meeting to discuss the status of discussions with Intrexon regarding the proposed strategic transaction, the Board was advised of its considerations in connection with a possible conflict of interest if Intrexon were to offer the executives of GenVec employment with Intrexon prior to the closing of the transaction with Intrexon.  Additionally, the Registration Statement states that on January 22, 2017, the special committee discussed Intrexon's proposed merger agreement, including provisions with respect to "employment matters." The Registration Statement fails, however, to disclose whether any of Intrexon's previous proposals for the Company mentioned the continuing role of GenVec executives with the post-transaction company and further fails to disclose the timing and nature of any previous communications between GenVec and Intrexon regarding future employment and/or directorship of GenVec's officers and directors, including who participated in all such communications.

53.     In addition, the Registration Statement fails to expressly indicate whether GenVec entered into any confidentiality agreements with the parties it held discussions with regarding potential collaborations or partnerships and if so, whether these confidentiality agreements contained standstill provisions that are still in effect and/or "don't-ask-don't-waive" standstill provisions that are presently precluding these industry participants from making a topping bid for

14

the Company.

54.    Moreover, the Registration Statement briefly makes reference to a special committee of the Board formed to consider the terms of and negotiate the Intrexon transaction, but fails to disclose (i) what necessitated the formation of the special committee of the Board and whether it was formed because of conflicts faced by other Board members in being able to independently evaluate the merger; (ii) the composition of the Board; (iii) and the specific directives and authority given to the special committee.

55.    The omission of this information renders the statements in the "Background of the merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

### Materially Incomplete and Misleading Disclosures Concerning Roth's Potential Conflicts of Interest

56.    The Registration Statement sets forth:

Roth in the past has provided and may in the future provide investment banking and other financial services to GenVec and its affiliates for which Roth and its affiliates have received, or, in the case of future services, may receive, compensation. Roth has not, however, had a material relationship with, nor otherwise received fees from, GenVec or any other parties to the merger during the two years preceding the date of Roth's opinion.

The Registration Statement fails, however, to disclose the investment banking and other financial services it performed for GenVec and its affiliates and Intrexon and affiliates to allow GenVec stockholders to make their own determination of the potential conflicts faced by Roth.

57.    The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)    From page 61 of the Registration Statement:

15

Roth in the past has provided and may in the future provide investment banking and other financial services to GenVec and its affiliates for which Roth and its affiliates have received, or, in the case of future services, may receive, compensation. Roth has not, however, had a material relationship with, nor otherwise received fees from, GenVec or any other parties to the merger during the two years preceding the date of Roth's opinion. Roth is a full service securities firm engaged in securities trading and brokerage activities, as well as providing investment banking and other financial services. In the ordinary course its business, Roth and its affiliates may acquire, hold or sell, for its and its affiliates' own accounts and for the accounts of customers, equity, debt and other securities and financial instruments (including bank loans and other obligations) of GenVec and the other parties to the merger, and, accordingly, may at any time hold a long or a short position in such securities. In the future, Roth may provide financial advisory and investment banking services to Intrexon and its affiliates for which Roth would expect to receive compensation.

***Materially Incomplete and Misleading Disclosures Concerning the Financial Analyses Performed by Roth***

58.    The Registration Statement contains Roth's written fairness opinion, and describes the various valuation analyses Roth performed in support of its opinion.  However, the description of Roth's opinions and analyses fail to include key inputs and assumptions underlying the analyses.  Without this information, as described below, GenVec's public stockholders are unable to fully understand the analyses and, thus, are unable to determine what weight, if any, to place on its fairness opinion rendered in support of the Proposed Transaction.

59.    With respect to Roth's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) Roth's basis for calculating terminal values based on declining cash flow at a rate of 3.0% to 7.0% applied to management's cash flow estimates in year 2039; (ii) the definition of "unlevered free cash flow" used in the analysis; and (iii) why the Company's net operating loss ("NOL") carryforwards of approximately $266.0 million for U.S. federal income tax purposes available to offset future taxable income and U.S. federal and state research and development tax credits of $14.6 million were not taken into account in conducting this analysis.

60. Defendants' failure to provide GenVec stockholders with the foregoing material information renders the statements in the "Opinion of Roth Capital Partners as GenVec's financial advisor" section of the Registration Statement false and/or materially misleading and constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

61. Plaintiff repeats all previous allegations as if set forth in full.

62. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

63. During the relevant period, defendants disseminated the false and misleading

17

Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

64.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  The Registration Statement misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the financial analyses performed by the Company's financial advisors, and the actual intrinsic standalone value of the Company.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

65.    The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

66.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

67.    Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

68.    Plaintiff repeats all previous allegations as if set forth in full.

69.    The Individual Defendants acted as controlling persons of GenVec within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of GenVec and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

70.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

72.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues

19

and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

73.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

74.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of GenVec, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to GenVec stockholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: April 6, 2017

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel.: (212) 682-3025
Facsimile: (212) 682-3010

*Attorneys for Plaintiff*

**RIGRODSKY & LONG, P.A.**

*/s/ Brian D. Long*

Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Tel.: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

21